Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 1861 | DATE | 4/4/2002 |
| CASE TITLE | U.S.A. ex rel Leroy Wilson vs. James M. Schomig | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: We deny the Section 2254 petition for writ of habeas corpus [0-1] brought by petitioner Leroy Wilson. This is a final and appealable order. This case is terminated.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | APR 08 2002 date docketed | | |
| ✓ | Docketing to mail notices. | | |  |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TSA | courtroom deputy's initials |  Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. LEROY WILSON ) ) ) | |
| Petitioner, ) ) | |
| v. ) ) ) | No. 00 C 1861 |
| JAMES M. SCHOMIG, Warden Pontiac Correctional Center, ) ) ) ) | Wayne R. Andersen District Judge |
| Respondent. ) | |

DOCKETED APR 8 2002

## MEMORANDUM, OPINION AND ORDER

This case is before the Court on the petition of Leroy Wilson for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, we deny the petition for habeas corpus.

## BACKGROUND

Wilson does not challenge the statement of facts set forth in the order of the Illinois Appellate Court affirming his first degree murder and aggravated discharge of a firearm convictions. *People v. Wilson*, No. 1-96-3655 (Ill. App. Ct. April 14, 1999). For purposes of federal habeas review, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e). Accordingly, we will adopt the facts as stated in the opinion of the Illinois Appellate Court as our own.

During *voir dire*, the trial court initially addressed the prospective jurors, including Daniel Walter, as a group. The court asked the venire, *inter alia*, whether they would be unable or unwilling to follow the law as they were instructed. No venire member responded affirmatively. The court then explained that Wilson was presumed innocent and that the State had the burden of proving his guilt for the charged offenses beyond a reasonable doubt. The

court additionally explained that the defendant was not required to prove "anything" on his own behalf.

During individual examination of each of the prospective jurors, the court noted that Mr. Walter previously had served as a juror in an unrelated civil trial. The court asked Walter if he could set aside any information he had learned in that case and Walter indicated that he could. Walter further assured the court he would decide petitioner's case based upon the evidence and law presented.

When asked by the court if any friend or family member was a law enforcement official, lawyer, or judge, Walter indicated he had three friends who served as police officers. Walter acknowledged that he occasionally inquired about the cases in which the officers were involved. The court asked Walter if "there [was] anything about [those relationships] that would affect [his] ability to be fair and impartial in [Wilson's] case." Walter stated "yes." Walter did not explain his response, and the court did not ask additional questions.

Walter also indicated his brother-in-law was employed as an attorney for the Fraternal Order of Police. The court asked Walter if "there [was] anything about [that relationship] that would affect [his] ability to give both sides a fair trial in [Wilson's] case," and Walter responded "yes." Again, Walter did not explain his answer, and the court did not inquire further.

Walter lastly noted that he was acquainted with a judge on the Circuit Court of Cook County. When questioned about his relationship, Walter assured the court it would not affect his impartiality. The court concluded by asking Walter if "there [was] anything that [it had] not touched upon that would affect [his] ability to give both sides a fair trial." Walter answered "no."

2

The record indicates that defense counsel neither questioned Walter himself nor asked the trial court to conduct further *voir dire*. Consequently, Walter was sworn as a juror without objection, and ultimately served as jury foreperson at Wilson's trial.

At trial, the State's evidence established that on February 7, 1996, at approximately 2:40 a.m., Michael Edwards and Christopher Hill were walking north on the 5600 block of South King Drive in Chicago, Illinois to a gas station located at 55th Street and King Drive. As Edwards and Hill approached an apartment building at 5636 South King Drive, they saw Steven Freeman, accompanied by unidentified woman, in front of the building. Hill stopped Freeman and they engaged in conversation while the woman entered the building. Edwards continued walking north on King Drive.

Edwards testified that when he was about 25 or 30 feet beyond the apartment building, he heard a door open. About three or four seconds later, he heard gunshots. Edwards immediately ran towards the gas station, and, as he ran, felt a bullet graze his back. Edwards continued running and never saw the individual who fired the gun at him.

When Hill was about 40 feet from the apartment building, he heard a gun shot. Hill immediately turned around and saw Wilson in front of the building with his arms fully extended firing a handgun at him, Edwards, and Freeman. As additional shots were fired, Hill heard Freeman and Edwards say they had been shot. Hill ran east and ultimately met up with Edwards on the corner of King Drive and 56th Street. After checking Edwards' wound, Hill saw Freeman jogging north on King Drive toward the gas station. Hill and Edwards proceeded to the gas station where they discovered Freeman lying on the ground in front of the cashier window. The police and an ambulance arrived a short time later. After briefly talking with the police, Hill and

3

Edwards left the gas station to tell Freeman's wife about her husband's condition. Freeman was transported to Cook County Hospital where he later died as a result of a gunshot wound to his lower back.

The defense rested without presenting evidence. Following deliberations, the jury found Wilson guilty of first-degree murder and two counts of aggravated discharge of a firearm.

At sentencing, the State presented two witnesses in aggravation. Tyrone Harris, a member of the Gangster Disciple street gang, described an incident that occurred on January 19, 1996 at the 5636 South King Drive location in which he and a fellow gang member were shot by Wilson as they were visiting a friend. In addition, Ronald Kimble, a Chicago police officer, stated he went to the 5636 South King Drive location on February 18, 1996 and observed two men in front of the building. According to Kimble, the two men tossed a bag of narcotics to the ground when they saw him and then ran into the building. Kimble followed the men to an apartment located on the third floor and, upon entry, saw Wilson sitting on a bed. When he asked Wilson to stand, Kimble recovered a .45 caliber semiautomatic handgun from where Wilson was sitting. In addition, Kimble recovered from the apartment five or six more handguns, three boxes of ammunition of differing calibers, and a bullet proof vest. The pre-sentence investigation report, which the State also introduced in aggravation, detailed Wilson's criminal history as an adult, including felony convictions for possession of a stolen vehicle, violation of a bail bond, and unlawful use of weapons by a felon. The report also revealed his lengthy involvement as a member of the Mickey Cobras street gang.

In imposing sentence, the trial court noted Wilson's gang involvement and stated Wilson seemed to enjoy his affiliation with the Mickey Cobras. The court further indicated that Wilson

"committed one murder and shot two other people in the same location, has been convicted previously of gun violations and had another gun on a different occasion." After finding the defendant "a very dangerous person," the court imposed an extended term sentence of 80 years imprisonment for the murder conviction, noting Wilson's sentence was a "hundred percent sentence." The court also imposed a concurrent term of 30 years imprisonment for the aggravated discharge of a firearm conviction.

## PROCEDURAL HISTORY

Wilson appealed his convictions and sentence to the Illinois Appellate Court raising the following four issues: (1) the trial court abused its discretion by conducting an insufficient *voire dire* examination of venireman Walter which deprived him of the right to a trial by an impartial jury; (2) defense counsel at trial was ineffective for failing to: (a) challenge Walter for cause; (b) exercise an available peremptory challenge; and (c) request further examination of Walter after he indicated his impartiality would be affected by certain personal relationships; (3) the trial court abused its discretion by failing to articulate a basis for imposing an extended-term sentence for murder; and (4) the legislation enacting the truth-in-sentencing law was unconstitutional. On March 3, 1999, the Illinois Appellate Court affirmed Wilson's convictions but vacated Wilson's extended-term sentence and reduced Wilson's sentence to the maximum term of 60 years imprisonment. Wilson then filed a petition for rehearing to the Illinois Appellate Court. On April 14, 1999, the Illinois Appellate Court denied the petition for rehearing and affirmed Wilson's convictions.

Wilson then filed a timely petition for leave to appeal to the Illinois Supreme Court in which he raised the following two issues: (1) the trial court abused its discretion by conducting

an insufficient *voire dire* examination of Mr. Walter which deprived him of the right to a trial by an impartial jury; and (2) defense counsel at trial was ineffective for failing to: (a) challenge Walter for cause; (b) exercise an available peremptory challenge; and (c) request further examination of Walter after he indicated his impartiality would be affected by certain personal relationships. On October 28, 1999, the Illinois Supreme Court denied leave to appeal. Wilson did not file a petition for post-conviction relief pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1, *et seq*.

On March 27, 2000, Wilson filed in this Court the instant petition for a writ of habeas corpus. In his petition, he raises two grounds for relief: (1) the trial court abused its discretion by conducting an insufficient *voire dire* examination of Mr. Walter which deprived him of the right to a trial by an impartial jury (Count I) and (2) defense counsel at trial was ineffective for failing to: (a) challenge Walter for cause; (b) exercise an available peremptory challenge; and (c) request further examination of Walter after he indicated his impartiality would be affected by certain personal relationships (Count II).

## DISCUSSION

Federal courts may issue a writ of habeas corpus if a petitioner demonstrates that he is "in [state] custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2245(a); *Moffat v. Gilmore*, 113 F.3d 698, 702 (7th Cir. 1997); *see also Del Vecchio v. Illinois Dept. of Corrections*, 31 F.3d 1363, 1370 (7th Cir. 1994) (en banc) ("[F]ederal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law."). The federal courts may not grant habeas relief under Section 2254 unless the state court's judgment "(1) resulted in a decision that was contrary to, or involved an unreasonable application

of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Before a federal court may review the merits of a habeas petition, a petitioner must: (1) exhaust all remedies available in state courts; and (2) fairly present any federal claims in state court first, or risk procedural default. *See Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001) ("Failure to exhaust available state court remedies constitutes a procedural default."); *see also Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996) (same). "The habeas petitioner must present his federal constitutional claims initially to the state courts in order to give the state 'the opportunity to pass upon alleged violations of its prisoners' federal rights.'" *McGowan v. Miller*, 109 F.3d 1168, 1172 (7th Cir. 1997) (quoting *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887 (1995)).

A petitioner has exhausted his state court remedies "by either (a) providing the highest court in the state a fair opportunity to consider the constitutional issue, or (b) having no further available means for pursuing a review of one's conviction in state court." *Wallace v. Duckworth*, 778 F.2d 1215, 1219 (7th Cir. 1985). In this case, exhaustion is not an issue. Respondent concedes that Wilson has exhausted his state court remedies for the purposes of federal habeas review because he has no further avenues in state court through which to challenge his conviction. (Resp. Answer at 3). We now turn to the issue of procedural default.

I. **Procedural Default**

The procedural default hurdle forbids the federal courts from addressing claims that were not fairly presented to the state court. *Jones v. Washington*, 15 F.3d 671, 675 (7th Cir. 1994).

7

Procedural default occurs either when a state court has declined to address a federal claim because the petitioner failed to satisfy an independent state procedural requirement, *Coleman v. Thompson*, 501 U.S. 722, 729-30, 111 S.Ct. 2546 (1991), or when the petitioner fails to present a claim to the state courts at the time, and in the way, required by the state. *Hogan v. McBride*, 74 F.3d 144, 146 (7th Cir. 1996). In Illinois, a habeas petitioner is required to raise all arguments before the Illinois Supreme Court, even though the Court has discretionary control over its docket. *O'Sullivan v. Boerckel*, 526 U.S. 838, 843, 119 S.Ct. 1728 (1999).

In this case, respondent contends that Wilson procedurally defaulted Counts I and II. Specifically, respondent argues that, with regard to Count I, the Illinois Appellate Court held that Wilson's claim was waived because he neither objected to the addition of venireman Walter during jury selection nor in his post trial motion. As for Count II, respondent asserts that this claim was procedurally defaulted because Wilson failed to raise the issue in his petition for leave to appeal to the Illinois Supreme Court. We will address each of these arguments in turn.

### A.    Count I

Under Illinois law, issues that could have been raised on direct appeal but were not are considered waived. *People v. Coleman*, 168 Ill.2d 509, 522, 660 N.E.2d 919 (1996). In Count I of his habeas petition, Wilson argues that he was deprived his right to trial by an impartial jury because the trial court abused its discretion by conducting an insufficient *voir dire* examination of Mr. Walter. However, the Illinois Appellate Court determined that Wilson "neither raised this point during jury selection nor in his post trial motion and, consequently, has waived this issue on appeal." *Wilson*, No. 1-96-3655, at *7 (citing *People v. Enoch*, 122 Ill.2d 176, 185-92, 522 N.E.2d 1124, 1129-30 (1988); *People v. Martin*, 271 Ill. App. 3d 346, 354, 648 N.E.2d 992, 999

8

(1995)). In the Seventh Circuit, to determine whether a petitioner has forfeited or procedurally defaulted any of his claims, we must look solely to state law. In fact, as the Seventh Circuit has explained, "[f]orfeiture depends on state law, and it is accordingly essential to know whether the state courts have either held that a procedural misstep is a forfeiture, or would so hold if a collateral attack were filed in state court." *McBride*, 74 F.3d at 147. Here, the Illinois Appellate Court held that Wilson forfeited Count I pursuant to Illinois state waiver principles. Under the law of this circuit, it is not our place to contradict these types of determinations.

A federal court may nonetheless address the merits of a procedurally defaulted claim if the petitioner can establish cause and prejudice that would excuse it or, alternatively, establish that he fits within the miscarriage of justice exception to the cause and prejudice rule. *Coleman*, 501 U.S. at 750-51; *Wainwright v. Sykes*, 433 U.S. 72, 84-85, 97 S.Ct. 2497 (1977). Beginning with the cause and prejudice standard, the Supreme Court has interpreted "cause" under this test to be something external to the petitioner which is both beyond his control and which cannot be fairly attributed to him. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639 (1986). In order to establish prejudice, the petitioner "must show not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

In the instant case, Wilson has neither alleged nor demonstrated in his petition that his failure to object to the addition of venireman Walter during jury selection and in his post trial motion was due to circumstances beyond his control which could not be fairly attributed to him. Wilson has also failed to establish in his petition that errors at trial worked to his actual and substantial disadvantage. Absent these crucial arguments, we are required to conclude that

9

Wilson has failed to establish cause and prejudice in his petition.

Although Wilson has failed to establish "cause and prejudice" to excuse his procedural default, he can still overcome this forfeiture by showing that he fits within the "miscarriage of justice" exception. This exception is limited to those extraordinary cases in which the petitioner is actually innocent of the crime for which he is imprisoned. *Bell v. Pierson*, 267 F.3d 544, 551 (7th Cir. 2001). Therefore, it requires a colorable claim of actual innocence, as opposed to legal innocence, coupled with an allegation of a constitutional claim. *See Sawyer v. Whitley*, 505 U.S. 333, 339-40, 112 S.Ct. 2514(1992). The miscarriage of justice exception applies only if the petitioner can demonstrate that it is more likely than not that no reasonable jury would have convicted him in the absence of the alleged defect in the state court proceedings. *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851 (1995). In this case, Wilson generally asserts that, but for the errors of his attorney and the trial court, he would not have been convicted of first degree murder and aggravated discharge of a firearm. Wilson fails to support this assertion with any evidence that he is actually innocent of killing Freeman. Absent such evidence, Wilson cannot establish that, but for the alleged errors in his trial, it is more likely than not that no reasonable trier of fact would have convicted him of first degree murder and aggravated discharge of a firearm. Accordingly, Wilson does not meet the miscarriage of justice exception.

Though Count I is arguably barred from federal habeas review, we note that the Illinois Appellate Court concluded that Count I raised an issue that affected Wilson's constitutional right to a fair trial, and therefore it considered the merits of Count I under the plain error exception to the waiver rule. Accordingly, we too will review the merits of Count I below.

### B. Count II

As for Count II, respondent asserts that Wilson has procedurally defaulted his ineffective assistance of counsel claim because he failed to raise it in his petition for leave to appeal to the Illinois Supreme Court. We disagree. In Wilson's petition for leave to appeal to the Illinois Supreme Court, he states "[r]eview is also necessary because the appellate court concluded that defense counsel was not ineffective for failing to challenge this incompetent juror in any way." In our opinion, this statement demonstrates that Wilson raised his ineffective assistance of counsel claim in his petition for leave to appeal to the Illinois Supreme Court. As a result, we conclude that this claim is not procedurally defaulted and is instead ripe for a resolution on the merits.

### II. Review on the Merits

We will consider Counts I and II on the merits. These claims were raised on direct appeal to the Illinois Appellate Court and again in a petition for leave to appeal to the Illinois Supreme Court. Title 28, United States Code, Section 2254(d) governs the consideration of any claim adjudicated by a state court on its merits. Under the statute, we may grant habeas relief only if the state court's adjudication of the claim "was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Under subsection (d)(2), habeas relief is possible if the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented" in the state court.

The Supreme Court, in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495 (2000), attempted to clarify the applicable standard of review within the meaning of Section 2254. The

11

Court noted that the act does not explicitly prescribe a recognizable standard of review for applying either of the statutory clauses. *Id.* at 385. Recognizing the need for further clarification and direction to lower courts, the Supreme Court concluded that the "[the act] plainly sought to ensure a level of 'deference to the determination of state courts,' as long as those decisions do not conflict with federal law or apply federal law in an unreasonable way." *Id.* at 376. Additionally, the Supreme Court determined that, in passing the statute, "Congress wished to curb delays, to prevent 'retrials' on federal habeas petitions and to give effect to state convictions to the extent possible under the law. When federal courts are able to fulfill these goals within the bounds of the law, [the statute] instructs them to do so." *Id.* Therefore, this Court is directed to apply a deferential standard of review to the state court decision unless it is determined that the state court violated federal law.

### A. Count I

Applying this standard of review to Count I of Wilson's petition, we must deny it. Wilson claims that he was deprived of his right to trial by an impartial jury because the trial court abused its discretion by conducting an insufficient *voir dire* examination of Mr. Walter. We conclude that Wilson has failed to meet his burden to demonstrate that the state courts rendered a decision that was "contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court." 28 U.S.C. § 2254(d)(1).

The Fourteenth Amendment's Due Process Clause demands that "if a jury is to be provided the defendant, regardless of whether the Sixth Amendment requires it, the jury must stand impartial and indifferent to the extent commanded by the Sixth Amendment." *Morgan v. Illinois*, 504 U.S. 719, 727 112 S.Ct. 2222 (1992) (citing *Turner v. Louisiana*, 379 U.S. 466, 471

85 S.Ct. 546 (1965)). Part of the guaranty of a defendant's right to an impartial jury is an adequate *voir dire* to identify unqualified jurors. *Id.* at 728. The trial court has wide discretion in choosing the course of inquiry during *voir dire* to ascertain whether the prospective jurors hold any bias or prejudice that would prevent them from reaching a verdict based solely on the evidence presented at trial. *Mu'Min v. Virginia*, 500 U.S. 415, 427, 111 S.Ct. 1899 (1991). Further, the trial court has broad discretion in deciding what questions should be asked on *voir dire*. *Id.* at 424. Failure to ask a specific question rises to the level of constitutional error only when the trial is rendered fundamentally unfair. *Id.* at 425-26.

Upon a review of the record, we conclude that the trial court did not abuse its discretion with respect to jury selection. The court's *voir dire* examination of Mr. Walter conformed to the essential demands of fairness and was sufficient to ensure the selection of an impartial jury at Wilson's trial. The trial court admonished the venire, which included Mr. Walter, that Wilson was presumed innocent and that this presumption could be overcome only by evidence demonstrating Wilson's guilt beyond a reasonable doubt. Moreover, in response to the trial court's questions, Walter explicitly stated he would follow the law and decide Wilson's case based solely on the evidence presented at trial.

It is also important to note that the trial court judge and the attorneys for both the defendant and the prosecution have a duty to object or request follow-up questions during *voire dire* if any seem appropriate. The decision of the trial court judge and the attorneys to not request follow-up questions of Walter suggests to this Court that they all concluded, based on their interactions with the venire, that Walter would be impartial. In addition, we find that it was reasonable for the trial court judge and the attorneys to have determined that Walter's relationships with police officers and an attorney for the Fraternal Order of Police were

13

insignificant because of the lack of police credibility issues raised during the trial.

In conclusion, Wilson presents no evidence tending to prove that the trial court judge or the attorneys misjudged Walter's impartiality. Wilson points to no Seventh Circuit or United States Supreme Court precedent that supports his tenuous position that the *voir dire* examination conducted by the trial court failed to create a reasonable assurance that Mr. Walter would serve as an impartial juror. Therefore, Wilson has failed to sustain his burden under Section 2254(d), and his claim that he was denied the right to an impartial jury must fail.

### B. Count II

Applying the statutory standard of review to Count II of Wilson's petition, we also must deny it. Wilson claims he was denied the effective assistance of counsel when his trial lawyer failed to: (a) challenge Walter for cause; (b) exercise an available peremptory challenge; and (c) request further examination of Walter after he indicated his impartiality would be affected by certain personal relationships. We conclude that Wilson has failed to meet his burden to demonstrate that the state courts rendered a decision that was "contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court." 28 U.S.C. § 2254(d)(1).

The standard for reviewing a claim of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). *Strickland* sets fort a two-pronged analysis for determining ineffectiveness of counsel: (1) a showing that counsel's performance was deficient; and (2) a showing that the deficient performance prejudiced the defendant. *Id.* at 678. In order to prevail on his claim of ineffectiveness under the first prong of the *Strickland* test, Wilson must show that his counsel's performance fell below an objective

14

standard of reasonableness. *Id.* In reviewing the challenged conduct, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* To satisfy the prejudice prong of the *Strickland* test, Wilson must show that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. *Id.* This Court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* Rather, "[i]f it is easier to dispose of an ineffective assistance of counsel claim based on the ground of lack of sufficient prejudice, which . . . will often be so, that course should be followed." *Id.* In this case, it is easier to dispose of Wilson's ineffective assistance of counsel claim based on the ground of lack of sufficient prejudice, and accordingly, that is the course we will follow.

Initially, we note that the Illinois Appellate Court determined that Wilson's ineffective assistance of counsel claims concerning trial counsel's failure to challenge for cause or request further examination of Walter must fail because the trial court record does not contain a transcript of the jury selection conference. The Illinois Appellate Court, applying Illinois law, stated that "[w]here the appellate record is insufficient or fails to demonstrate the alleged error, the reviewing court must refrain from supposition and decide accordingly." *Wilson*, No. 1-96-3655, at *11 (citing *People v. Jackson*, 145 Ill. 2d 43, 92, 582 N.E.2d 125, 148 (1991)). The Illinois Appellate Court determined that, absent the trial transcript, it could not determine what challenges or requests were made by Wilson's trial counsel, and, thus, it could not evaluate counsel's effectiveness with respect to these activities. *Id.*

Accordingly, the Illinois Appellate Court was left to determine whether counsel's failure

15

to exercise a peremptory challenge to exclude Mr. Walter deprived the petitioner of his right to effective representation. The Appellate Court's decision regarding this matter reflects ample consideration and appropriate application of the *Strickland* standard. The court noted that "[b]y failing to identify any clear bias or prejudice held by Walter against him, [Wilson] has not demonstrated that the verdict would probably have been different if Walter had not served as a juror." *Id.* at *15. Therefore, the Appellate Court reasonably concluded that Wilson had not been prejudiced by the alleged deficiencies of his trial counsel.

Similarly, Wilson's attempt to make an ineffectiveness argument in this Court is unsuccessful in that he fails to sustain his burden under the "prejudice" prong of the *Strickland* test. He has not presented any evidence tending to show that Walter held any clear bias or prejudice against him, and, accordingly, has not shown that the verdict would have been different if Walter had not served as a juror. He neither points to any United States Supreme Court precedent that supports his position nor does he demonstrate that the Illinois Appellate Court failed to properly assess trial counsel's conduct pursuant to *Strickland*. Therefore, Wilson has failed to sustain his burden under Section 2254(d), and his claim of ineffective assistance of counsel must fail.

## CONCLUSION

For the foregoing reasons, we deny the § 2254 petition for writ of habeas corpus brought by petitioner Leroy Wilson. This is a final and appealable order. This case is terminated.

It is so ordered.

/ Wayne R. Andersen
United States District Judge

Dated: April 4, 2002